1  JOSEPH S. KLAPACH (State Bar No. 206345)
   THE LAW OFFICES OF JOSEPH KLAPACH
2  8200 Wilshire Boulevard, Suite 300
   Beverly Hills, CA 90211-2328
3  Telephone: (310) 525-3724
   Facsimile: (310) 728-1779
4  Email: Joseph@KlapachLaw.com

5  Attorney for Defendants
   STARFISH COASTAL PROPERTIES, LLC,
6  KENNETH CHRIS SHELDON, ERIN PAIGE
   SHELDON

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  FRACTIONAL VILLAS, INC., a California Corporation, | CASE No. 08 CV 0968 JAH LSP |
| 12                    Plaintiff, | DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2) |
| 13         vs. | |
| 14  STARFISH COASTAL PROPERTIES, LLC, a Georgia Limited Liability Company, KENNETH CHRIS SHELDON, an individual, ERIN PAIGE SHELDON, an individual; and DOES 1-25, | |
| 15 | Date: October 14, 2008 |
| 16 | Time: 2:30 p.m. |
| 17                    Defendants. | Judge: Hon. John Houston |
| 18 | Magistrate Judge: Hon. Leo S. Papas |
| 19 | [Filed concurrently with Defendants' Memorandum of Points And Authorities In Support of Defendants' Motion to Dismiss; Declaration of Erin Sheldon; Declaration of Kenneth Chris Sheldon; and Declaration of Brent Palmer] |
| 20 | |
| 21 | |
| 22 | |

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>NOTICE OF MOTION TO DISMISS FOR LACK OF PERSONAL</u>

<u>JURISDICTION</u>

TO ALL PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE that Defendants will, and hereby do, move to dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction on October 14, 2008 at 2:30 p.m. before the Hon. John Houston, Courtroom 11, Edward J. Schwartz U.S. Courthouse, 940 Front Street, San Diego, CA 92101.  This Motion is made on the ground that Plaintiff has failed to prove facts sufficient to establish that Defendants, all of whom are Georgia residents, have sufficient "minimum contacts" with California to support the exercise of personal jurisdiction.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support thereof, the Declarations of Erin Sheldon, Kenneth Chris Sheldon, and Brent Palmer; any facts of which this Court may take judicial notice; any further submissions in support of this motion; the pleadings and records in the file; and the arguments of counsel.

DATED:  August 15, 2008             LAW OFFICES OF JOSEPH KLAPACH


                                    By:  /s  Joseph S. Klapach
                                         Joseph S. Klapach
                                    Attorney for Defendants

1     **PROOF OF SERVICE BY NOTICE OF ELECTRONIC FILING**

2              I, Joseph S. Klapach, declare:

3              1.      I am over the age of 18 and not a party to the within cause.  My

4     business address is 8200 Wilshire Boulevard, Suite 300, Beverly Hills, CA  90211.

5              2.      Pursuant to General Order No. 550, on August 15, 2008, I

6     electronically filed Defendants' Notice of Motion and Motion to Dismiss First

7     Amended Complaint for Lack of Personal Jurisdiction through the Southern District

8     of California's ECF system.  On August 15, 2008, I also emailed an Order Granting

9     Motion to Dismiss First Amended Complaint for Monetary Damages to

10    efile_houston@casd.uscourts.gov, on which I cc'd counsel for Plaintiff.

11             I declare under penalty of perjury under the laws of the United States

12    that the foregoing is true and correct.

13             Executed on August 15, 2008, at Los Angeles, California.

14

15                                      _____/s Joseph S. Klapach_____

16                                              Joseph S. Klapach

17

18

19

20

21

22

23

24

25

26

27

28

1  JOSEPH S. KLAPACH (State Bar No. 206345)
   THE LAW OFFICES OF JOSEPH KLAPACH
2  8200 Wilshire Boulevard, Suite 300
   Beverly Hills, CA  90211-2328
3  Telephone:   (310) 525-3724
   Facsimile:    (310) 728-1779
4  Email: Joseph@KlapachLaw.com

5  Attorney for Defendants
   STARFISH COASTAL PROPERTIES, LLC,
6  KENNETH CHRIS SHELDON, ERIN PAIGE
   SHELDON

7

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

11 FRACTIONAL VILLAS, INC., a          CASE No.  08 CV 0968 JAH LSP
   California Corporation,
                                        MEMORANDUM OF POINTS AND
12                                      AUTHORITIES IN SUPPORT OF
               Plaintiff,               DEFENDANTS' MOTION TO
13                                      DISMISS FIRST AMENDED
           vs.                          COMPLAINT FOR LACK OF
14                                      PERSONAL JURISDICTION
   STARFISH COASTAL PROPERTIES,         UNDER FEDERAL RULE OF
15 LLC, a Georgia Limited Liability     CIVIL PROCEDURE 12(B)(2)
   Company, KENNETH CHRIS SHELDON,
16 an individual, ERIN PAIGE SHELDON,
   an individual; and DOES 1-25,        Hearing Date: October 14, 2008
                                        Hearing Time: 2:30 p.m.
17
               Defendants.              Judge:  Hon. John Houston
18
                                        Magistrate Judge: Hon. Leo S. Papas
19

20

21

22

23

24

25

26

27

28

1           **MEMORANDUM OF POINTS AND AUTHORITIES**

2     **I.     INTRODUCTION**

3        This is a lawsuit for copyright infringement brought by a California plaintiff

4 against a Georgia corporation, Starfish Coastal Properties, LLC, and two of its

5 principals, Georgia residents Kenneth Chris ("Chris") and Erin Sheldon.  Plaintiff

6 claims that the "Frequently Asked Questions" page of Defendant Starfish Coastal

7 Properties' website infringed upon its own copyrighted website.

8        This Court should dismiss this lawsuit for lack of personal jurisdiction over

9 Defendants.  Starfish Coastal Properties was a short-lived venture that sought to sell

10 fractional ownership interests in vacation homes located on Tybee Island, Georgia.

11 The company failed shortly after its inception because it was unable to obtain the

12 financing necessary to buy the Georgia properties it had hoped to sell.  Defendants

13 never conducted business in California.  Starfish Coastal Properties never owned a

14 single property in California (or elsewhere).  It never sold a single fractional

15 ownership interest or solicited such sales in California (or elsewhere).  And it never

16 engaged in any radio, television, print, or internet advertising or other marketing of

17 fractional ownership interests in California (or elsewhere).

18        Nonetheless, Plaintiff contends that personal jurisdiction exists because

19 Defendants posted content that allegedly infringed upon its copyright on an

20 informational website that could be viewed in California.  The Ninth Circuit has

21 expressly rejected this argument in a case that is squarely on point.

22        In *Pebble Beach Company v. Caddy*, 453 F.3d 1151 (9th Cir. 2006), the

23 Ninth Circuit held that the operation of an informational or passive website that can

24 be viewed in California is *not* sufficient to establish personal jurisdiction, even

25 where a defendant knowingly infringes upon a California resident's intellectual

26 property.  A plaintiff must show that the defendant engaged in "something more" –

27 some other tangible conduct that was expressly aimed at the forum state.  Without

28

1   such a rule, a defendant with a passive website could be sued in any state where a

2   plaintiff claiming copyright infringement lives.

3       In this case, Plaintiff does not allege, nor can it prove, the "something more"

4   required under the Ninth Circuit case law.  The only acts identified by Plaintiff as

5   being directed at California are the operation of an informational website and the

6   alleged posting of copyrighted material owned by a California resident on that

7   website.  The reasoning of *Pebble Beach* applies equally here: "Those acts were not

8   aimed at California and, regardless of foreseeable effect [to a California intellectual

9   property owner], are insufficient to establish jurisdiction." 453 F.3d at 1156.  As in

10  *Pebble Beach*, there is no evidence that Defendants expressly aimed the allegedly

11  infringing website at California.  Precisely the opposite is true.  Defendants created

12  the website to show prospective business partners *in Georgia* how they planned to

13  market the venture if they were able to get financing.  They did not even know who

14  Plaintiff was or visit the Plaintiff's website until after they were served with this

15  suit.  Because no basis exists to support personal jurisdiction over Defendants, this

16  Court should dismiss the action.

17      **II.     FACTUAL BACKGROUND**

18      Since 2004, Defendants Chris and Erin Sheldon have helped run a small bed

19  and breakfast on Tybee Island, Georgia.  Declaration of Erin Sheldon, ¶ 7 ("Erin

20  Sheldon Decl.").  Based on their familiarity with the area, the young couple became

21  interested in the prospect of selling fractional ownership interests in vacation homes

22  on Tybee Island, Georgia.  *Id*.  In the spring of 2007, they formed Defendant

23  Starfish Coastal Properties, LLC ("Starfish Coastal Properties"), to pursue their

24  business idea.  *Id*.  The venture failed at its inception.  Starfish Coastal Properties

25  tried to get financing to buy properties on Tybee Island, Georgia.  *Id*., ¶ 15.

26  However, because of the subprime mortgage meltdown and the resulting credit

27  crunch, Starfish Coastal Properties was unable to obtain financing, and the venture

28  never got off the ground.  *Id*., ¶¶ 20-22.

1    During its short-lived existence, Defendant Starfish Coastal Properties never

2  conducted any business in California or elsewhere. *Id.*, ¶¶ 10-14. It never owned a

3  single property. *Id.*, ¶ 21. It never sold a single fractional ownership interest. *Id.*, ¶

4  26. It never engaged in any radio, television, print advertising or other marketing of

5  the fractional ownership product. *Id.*, ¶ 23. Nor did it ever use any form of internet

6  advertising, such as internet search engine optimization, e-mail blasts, or

7  advertising through commodities such as Google ads. *Id.*

8    In July 2007, Starfish Coastal Properties set up a website.[1] *Id.*, ¶ 16 & Ex. A.

9  The website was designed to serve as a presentation that could be shown to local

10  financial institutions, investors, realtors, and other potential business partners in the

11  proposed fractional ownership venture. *Id.*, ¶ 18. Toward that end, the website

12  address was given only to 11 local Georgia real estate agents, builders, loan

13  officers, property managers, and potential investors. *Id.*; see Declaration of Brent

14  Palmer, ¶ 6 ("Palmer Decl."). These individuals were told that the website was an

15  example of how Starfish Coastal Properties planned to market fractional ownership

16  shares in the Tybee Island properties if it was ultimately able to obtain the financing

17  needed to buy them. Erin Sheldon Decl., ¶ 18; Palmer Decl., ¶ 6.

18    The website was a passive or informational website and consisted of just

19  eight pages.[2] *Id.*, ¶¶ 24-25 & Ex. A. The website did not take orders online, and

20  ―――――――――

[1]    Acting in her official capacity on behalf of Starfish Coastal Properties,
21  Defendant Erin Sheldon registered the website's domain name and prepared the
content of the website. Erin Sheldon, ¶ 16. (Defendant Chris Sheldon had no
22  involvement at all in preparing the content of the website.) Chris Sheldon Decl., ¶
9. Erin Sheldon kept track of the internet resources that she consulted in preparing
23  Starfish Coastal Properties' website, linking each of them into a "Favorites" page
on her computer. Erin Sheldon Decl., ¶ 17. She did not visit or review Plaintiff
24  Fractional Villas, Inc.'s website at any time before or during the preparation of
Starfish Coastal Properties' website. *Id.*, ¶ 17. The first time that any of the
25  Defendants had ever heard of Plaintiff Fractional Villas, Inc. or its principal, Robert
Vicino, was when they were served with this lawsuit in July 2008. Erin Sheldon
26  Decl., ¶ 17; Chris Sheldon Decl., ¶ 9.

27  [2]   A "Home Page" provided contact information for Starfish Coastal Properties.
An "About Us" page described the Sheldons background and the idea behind
28  Starfish Coastal Properties. A "Featured Properties" page described two of the

none of the hyperlinks (*i.e.*, links to documents or other websites) were operational. *Id*., ¶ 25.[3]  Starfish Coastal Properties received zero telephone calls or regular mail inquiries from third parties who had visited the website.  *Id*., ¶ 27.  It received only two email inquiries about the properties from third parties who had visited the website: one from Hong Kong and one from New York.  *Id*., ¶ 28.  Because Starfish Coastal Properties never secured financing and never purchased any properties to sell as part of the venture, it did not enter into any contract or other agreement with either of these individuals (or anyone else).  *Id*.  After financing fell through, Starfish Coastal Properties and its principals conducted no further business, and the company's website was taken down.  *Id*., ¶¶ 20-22.

In July 2008, Plaintiff filed and served this lawsuit claiming that the "Frequently Asked Questions" page of Defendant Starfish Coastal Properties' website infringed upon its own copyrighted website.  Before filing the lawsuit, Plaintiff did not contact Defendants or send them a cease-and-desist letter.

The complaint asserts two principal bases for personal jurisdiction in the Southern District of California: (1) Defendant Starfish Coastal Properties' website can be viewed (and therefore the "illegal dissemination" occurred) "in every jurisdiction in the United States, including this one"; and (2) "Defendants purposefully directed activities into the Southern District of California by willfully

---

Tybee Island properties that Starfish Coastal Properties hoped to buy.  A "Frequently Asked Questions" page gave general information about fractional ownership.  A "Documentation" page listed written materials that could be obtained upon request.  A "Financing" page listed several institutions that specialize in fractional ownership funding.  A "Links" page offered links to other websites that provide information about fractional ownership.  And an unfinished "More Information" page provided information about some of the legal requirements governing fractional ownership.  Erin Sheldon Decl., Ex. A.

[3]     The only way that a site visitor could interact with the website was by clicking on the Starfish Coastal Properties email address, which would allow the site visitor to send an email to the company.  *Id*.

1 disseminating over the internet copyrighted works owned and controlled by

2 Plaintiff," who resides in the Southern District of California.[4]

3    Defendants bring this motion to dismiss for lack of personal jurisdiction.

4 **III.  ANALYSIS**

5    **A.  <u>Legal Standard</u>:**

6    When a defendant moves to dismiss for lack of personal jurisdiction, the

7 plaintiff has the burden of proving the court has jurisdiction over the defendant.

8 *See Pebble Beach Company v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Harris*

9 *Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th

10 Cir. 2003).  Where, as here, the motion challenges the facts alleged, it must be

11 decided on the basis of competent evidence.  *See Data Disc., Inc. v. Systems*

12 *Technology Assocs., Inc.*, 557 F.2d 1280, 1289 n.5 (9th Cir. 1977).  To satisfy its

13 burden, the plaintiff must present evidence sufficient to establish a prima facie

14 showing of the required jurisdictional facts.  *See Pebble Beach*, 453 F.3d at 1154.

15 Although disputed facts are resolved in favor of plaintiff, the court must accept as

16 true uncontradicted facts established by the defendant's evidence.  *Id*.

17    **B.  <u>Plaintiff Cannot Establish Personal Jurisdiction Over Defendant</u>**

18       **<u>Starfish Coastal Properties</u>**

19    Plaintiff claims personal jurisdiction over Defendant Starfish Coastal

20 Properties exists under California's long-arm statute, but this statute extends only as

21 far as permitted by the United States Constitution's due process requirements.  *See*

22 *Harris Rutsky*, 328 F.3d at 1129.  To satisfy due process, a defendant must have

23 "minimum contacts" with the forum state such that he could reasonably expect to

24 be haled into court there.  *International Shoe v. Washington*, 326 U.S. 310, 315.[5]

25 ―――――――――――――――
[4]    The complaint also contains a conclusory allegation that "Defendants market,
26 advertise, and sell fractional ownership of properties to consumers and businesses
in the Southern District of California."  As noted above, Defendants never sold,
27 advertised, marketed, or otherwise solicited the sale of fractional ownership of
properties in California or elsewhere.
28 [5]    In the Ninth Circuit, the "minimum contacts" test is satisfied only where

1    In this case, Plaintiff contends that personal jurisdiction exists because

2    Defendants knowingly posted content that infringed upon the copyright of a

3    California resident on an informational website that could be viewed in California.

4    The Ninth Circuit's decision in *Pebble Beach* is squarely on point and rejects

5    personal jurisdiction on such grounds.  *Pebble Beach* holds that personal

6    jurisdiction cannot be established solely by the operation of a passive website that

7    can be viewed in California, even when a defendant knowingly infringes upon a

8    California resident's intellectual property, as Plaintiff (incorrectly) alleges here.

9    In *Pebble Beach*, the plaintiff, Pebble Beach Company, operated a golf resort

10   in California under the trade name, "Pebble Beach," and through a website,

11   www.pebblebeach.com.  453 F.3d at 1153.  The plaintiff filed suit for trademark

12   infringement against an individual named Caddy who operated a restaurant, bar,

13   and bed and breakfast in southern England called "Pebble Beach" and who

14   advertised the English resort on a website called, www.pebblebeach-uk.com.  *Id*.

15   Before moving to England, Caddy had worked at a restaurant in Carmel, California

16   and, therefore, knew about Pebble Beach's resort and trademark.  *Id*. at 1154, 1156.

17   Like Starfish Coastal Properties' website, the www.pebblebeach-uk.com

18   website was "not interactive."  *Id*. at 1154.  "Visitors to the website who have

19   questions about Caddy's services may fill out an on-line inquiry form.  However,

20   the website does not have a reservation system, nor does it allow potential guests to

21   book rooms or pay for services on-line."  *Id*.  The district court granted Caddy's

22   motion to dismiss for lack of personal jurisdiction.

23   The Ninth Circuit affirmed the dismissal.  It explained that to show a

24   defendant had "purposefully directed its activities" at California, the defendant

25   (1) "the defendant has performed some act or consummated some transaction
26   within the forum or otherwise purposefully availed himself of the privileges of
     conducting activities in the forum"; (2) "the claim arises out of or results from the
27   defendant's forum-related activities"; and (3) "the exercise of jurisdiction is
     reasonable."  *Pebble Beach*, 453 F.3d at 1155, quoting *Bancroft & Masters, Inc. v.*
28   *Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

1  "must have (1) committed an intentional act, which was (2) expressly aimed at the

2  forum state, and (3) caused harm, the brunt of which is suffered and which the

3  defendant knows is likely to be suffered in the forum state."  453 F.3d at 1156

4  (citations omitted).  The court cautioned, however, that a foreseeable effect from

5  the alleged infringement in the forum state is not enough.  "[W]e have warned

6  courts not to focus too narrowly on the test's third prong – the effects prong –

7  holding that 'something more' is needed in addition to a mere foreseeable effect" in

8  the forum state.  *Id*.  "Thus, the determinative question … is whether Caddy's

9  actions were 'something more' – precisely whether his conduct was *expressly*

10  *aimed at California*…."  *Id*., emphasis added.

11      Applying this rule to the facts before it, the Ninth Circuit held that "Caddy's

12  actions were not expressly aimed at California."  *Id*.  "The only acts identified by

13  Pebble Beach as being directed at California are the website and the use of the

14  name 'Pebble Beach' in the domain name.  Those acts were not aimed at California

15  and, *regardless of foreseeable effect* [to a California intellectual property owner],

16  are insufficient to establish jurisdiction."  *Id*., emphasis added.

17      The Court analogized the case to *Schwarzenegger v. Fred Martin Motor Co.*,

18  374 F.3d 797 (9th Cir. 2004).  There, the Ninth Circuit held that Arnold

19  Schwarzenegger failed to establish personal jurisdiction in California over an Ohio

20  car dealership that had impermissibly used his "Terminator" image in a newspaper

21  advertisement in Ohio.  "[E]ven though the advertisement might lead to eventual

22  harm in California," and even though the car dealership may have known that

23  Schwarzenegger was a California resident, "this 'foreseeable effect' was not

24  enough," absent evidence that the Ohio car dealership had engaged in

25  "individualized targeting of California" residents when it circulated the allegedly

26  infringing advertisement.  *Id*. at 1158.[6]

27  _____

28  [6]      These holdings are consistent with the rulings of other courts.  *See, e.g.,*
    *Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir. 2002) (dismissing libel

1   In reaching its conclusion in *Pebble Beach*, the Ninth Circuit expressly

2   rejected the position that Plaintiff takes in this case.  The plaintiff in *Pebble Beach*

3   had sued for "intentional infringement" of its intellectual property.  453 F.3d at

4   1154.  Citing Ninth Circuit precedent, the plaintiff argued that "Caddy's website

5   and domain name, *coupled [with] his knowledge of the golf resort as a result of his*

6   *working in California*, are sufficient to satisfy the express aiming standard…." *Id.*

7   at 1156, emphasis added.  In other words, the plaintiff in *Pebble Beach* argued that

8   operating a passive website combined with a knowing infringement of a California

9   resident's intellectual property – as Plaintiff (incorrectly) alleges here – was

10  sufficient to establish personal jurisdiction.  The Ninth Circuit emphatically rejected

11  the plaintiff's position: "We disagree.  If anything, these cases [cited by plaintiff]

12  establish that 'something more' – the express aiming requirement – has not been

13  met by Pebble Beach." *Id.*

14       The Ninth Circuit then undertook a lengthy discussion of the relevant case

15  law, highlighting the "something more" that was required to establish personal

16  jurisdiction in each case.

17          ● In *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998),

18            the defendant had not merely "registered the plaintiff's trademark as
    part of a domain name," but also (i) expressly did so "as part of a

19            scheme to obtain money from Panavision" (a California resident); and

20

21  action based on article appearing on newspaper's website for lack of personal
    jurisdiction where "[t]he newspapers did not post materials on the Internet with the

22  manifest intent of targeting Virginia readers"); *ALS Scan, Inc. v. Digital Service
    Consultants, Inc.*, 293 F.3d 707, 714-15 (4th Cir. 2002) (dismissing copyright

23  action for lack of personal jurisdiction where ISP provider "did not select or
    knowingly transmit infringing photographs specifically to Maryland with the intent

24  of engaging in business or any other transaction in Maryland"); *Minks v. AAAA
    Development, LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (dismissing copyright

25  action for lack of personal jurisdiction where sole contact to forum state was
    passive website);  *GMAC v. Raju*, 241 F.Supp.2d 589, 594-96 (E.D.Va. 2003)

26  (finding no personal jurisdiction under long-arm statute in copyright action, even
    though defendant operated an interactive website, sold infringing materials to two

27  Virginia residents, and provided a testimonial from a Virginia customer on the

28  website).

(ii) sent a letter to Panavision in California "demand[ing] $13,000 … to release the domain names to it." 453 F.3d at 1156-57.

- In *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990), the defendant hatched a "plan to defraud" a forum state resident and "sent a letter to the forum state addressed to the plaintiff, thereby defrauding a forum state entity." 453 F.3d at 1157.

- In *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), the defendant triggered an intellectual property lawsuit by sending a letter to a California company "that required [the California company] to sue or lose" a particular domain name. 453 F.3d at 1157.

- In *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2000), the defendant not only put up a passive website, but also was "actively competing with the plaintiff" in the forum state "by targeting Nevada consumers with radio and print media." 453 F.3d at 1157 n.2.[7]

In this case, Plaintiff does not allege, nor can it prove, the "something more" required under *Pebble Beach* and the Ninth Circuit case law. As in *Pebble Beach*, the only acts identified by Plaintiff as being directed at California are the operation of a passive website and the alleged posting of copyrighted material on that website. The reasoning of *Pebble Beach* applies equally here: "Those acts were not aimed at California and, *regardless of foreseeable effect* [to a California intellectual property owner], are insufficient to establish jurisdiction." 453 F.3d at 1156. There

---

[7]    Other Ninth Circuit cases can be harmonized in the same fashion. *Compare Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd by Felton v. Columbia Pictures Television, Inc.*, 521 U.S. 1151 (1997) (upholding personal jurisdiction in copyright action where non-resident defendant had numerous license agreements and "wide-ranging contract-related contacts" with a California resident and obtained the broadcasts that he willfully infringed pursuant to the California license agreements), with *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) (dismissing copyright action for lack of personal jurisdiction, even though defendant "caused and profited" from the improper grant of licenses to "magazine publications that he knew would be distributed in California").

is simply  no evidence that Defendants expressly aimed the company's website at California residents, as would be required to establish jurisdiction.

Indeed, this case presents a much stronger basis to deny jurisdiction than *Pebble Beach*.  In *Pebble Beach*, the defendant created the www.pebblebeach-uk.com website for the purpose of "advertis[ing] his services" to the general public. In this case, Defendants created the website for the purpose of showing potential business partners *in Georgia* how Starfish Coastal Properties would market the fractional ownership venture in the event that it ultimately obtained financing. Moreover, in *Pebble Beach*, there was evidence that the defendant knowingly infringed upon the "Pebble Beach" trademark because he lived in California only a few miles from the resort before opening his bed and breakfast in England under the same name.  In this case, Defendants had never heard of Plaintiff Fractional Villas, Inc. or its principal, Robert Vicino, nor had they visited its website until after they were served with this lawsuit.

Because no basis exists for personal jurisdiction over Defendants, this Court should dismiss the action.

## C.    Plaintiff Cannot Establish Personal Jurisdiction Over The Individual Defendants

To establish personal jurisdiction, a plaintiff must prove that each defendant has "minimum contacts" with the forum state on an individualized basis.  Plaintiff's assertion of personal jurisdiction over the individual defendants, Chris and Erin Sheldon, fails for the same reasons discussed above.

Moreover, there is even less of a basis to exercise personal jurisdiction against the individual defendants.  Chris and Erin Sheldon have less of a connection to California than the company.  Starfish Coastal Properties owned and operated a website that could be viewed in California.  Chris and Erin Sheldon did not own or operate any website in their individual capacities.  Chris Sheldon had no involvement whatsoever in preparing the content of the website and, therefore, has

1    no connection at all to the alleged infringement.  Chris Sheldon Decl., ¶ 9.  And,

2    any work that Erin Sheldon did in preparing the website was done in her official

3    capacity as an officer of Starfish Coastal Properties, not in her individual capacity.

4    Erin Sheldon Decl., ¶ 16.

5         "For jurisdictional purposes, the acts of corporate officers and directors in

6    their official capacities are the acts of the corporation exclusively and are thus not

7    material for purposes of establishing minimum contacts as to the individuals."  *Colt*

8    *Studio, Inc. v. BadPuppy Enterprise*, 75 F.Supp.2d 1104, 1111 (C.D. Cal. 1999)

9    (citing *Shearer v. Superior Court*, 70 Cal.App.3d 424, 430 (1977), and *Mihlon v.*

10    *Superior Court*, 169 Cal.App.3d 703, 713 (1985)).  In this case, Plaintiff

11    specifically alleges that Defendants Chris and Erin Sheldon were the "agent[s]" and

12    "officer[s]" of Defendant Starfish Coastal Properties, and that they were "*at all*

13    *times acting within the scope of such agency ... and/or employment*" when they

14    engaged in the alleged infringement.  Complaint, ¶ 6.  As such, Plaintiff cannot

15    establish personal jurisdiction over Chris and Erin Sheldon individually for actions

16    that Plaintiff itself concedes they undertook solely in their official capacity.

17    **IV.  CONCLUSION**

18         For the reasons expressed above, the Court must dismiss this action for lack

19    of personal jurisdiction.

20    DATED:  August 15, 2008            LAW OFFICES OF JOSEPH KLAPACH

21

22                               By:  /s  Joseph S. Klapach

23                                  Joseph S. Klapach

24                             Attorney for Defendants

25

26

27

28

1  **PROOF OF SERVICE BY NOTICE OF ELECTRONIC FILING**

2      I, Joseph S. Klapach, declare:

3      1.    I am over the age of 18 and not a party to the within cause.  My

4  business address is 8200 Wilshire Boulevard, Suite 300, Beverly Hills, CA  90211.

5      2.    Pursuant to General Order No. 550, on August 15, 2008, I

6  electronically filed Defendants' Memorandum of Points and Authorities in Support

7  of Defendants' Motion to Dismiss First Amended Complaint for Lack of Personal

8  Jurisdiction, as well as the supporting declarations of Erin Sheldon, Kenneth Chris

9  Sheldon, and Brent Palmer, through the Southern District of California's ECF

10  system.  On August 15, 2008, I also emailed an Order Granting Motion to Dismiss

11  First Amended Complaint for Monetary Damages to efile_houston@casd.uscourts.gov,

12  on which I cc'd counsel for Plaintiff.

13      I declare under penalty of perjury under the laws of the United States

14  that the foregoing is true and correct.

15      Executed on August 15, 2008, at Los Angeles, California.

16

17          _____/s Joseph S. Klapach_____

18          Joseph S. Klapach

19

20

21

22

23

24

25

26

27

28

MEMO OF P'S & A'S ISO DEFENDANTS' MOTION TO DISMISS

1   JOSEPH S. KLAPACH (State Bar No. 206345)
    THE LAW OFFICES OF JOSEPH KLAPACH
2   8200 Wilshire Boulevard, Suite 300
    Beverly Hills, CA 90211-2328
3   Telephone:  (310) 525-3724
    Facsimile:  (310) 728-1779
4   Email: Joseph@KlapachLaw.com

5   Attorney for Defendants
    STARFISH COASTAL PROPERTIES, LLC,
6   KENNETH CHRIS SHELDON, ERIN PAIGE
    SHELDON

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  FRACTIONAL VILLAS, INC., a          CASE No.  08 CV 0968 JAH LSP
    California Corporation.
12                                       DECLARATION OF ERIN
                                         SHELDON IN SUPPORT OF
12          Plaintiff,                    DEFENDANTS' MOTION TO
                                         DISMISS FOR LACK OF
13      vs.                               PERSONAL JURISDICTION
                                         UNDER FEDERAL RULE OF
14  STARFISH COASTAL PROPERTIES,         CIVIL PROCEDURE 12(B)(2)
    LLC, a Georgia Limited Liability
15  Company. KENNETH CHRIS SHELDON,     Date: October 14, 2008
    an individual. ERIN PAIGE SHELDON,   Time: 2:30 p.m.
16  an individual; and DOES 1-25.        Judge:  Hon. John Houston

17          Defendants.                  Magistrate Judge: Hon. Leo S. Papas

18

19

20

21

22

23

24

25

26

27

28

747366 01

DECLARATION OF ERIN SHELDON ISO DEFENDANTS' MOTION TO DISMISS

**DECLARATION OF ERIN SHELDON**

I, Erin Sheldon, declare:

1.    I am over eighteen (18) years of age and competent in all respects to give the testimony in this Declaration, which is based upon my personal knowledge.

2.    I understand this Declaration may be used in connection with a Motion To Dismiss filed by Defendants in the case styled <u>Fractional Villas, Inc. v. Starfish Coastal Properties, LLC, Kenneth Chris Sheldon, Erin Paige Sheldon and Does 1-25</u>, Case No. 08 CV 0968 JAH LSP, filed in the United States District Court for the Southern District of California.

3.    I reside in the State of Georgia.

4.    I own no real property in the State of California.

5.    I have no bank accounts or any personal property located in the State of California.

6.    I have visited the State of California four times in the last 20 years. None of these visits were for the purpose of transacting business. All of these visits were for the purpose of visiting family.

7.    Since 2004, my husband, Kenneth Chris Sheldon, and I have helped run a small bed and breakfast on Tybee Island, Georgia. Based on our familiarity with the area, my husband and I decided to pursue the idea of selling fractional ownership interests on Tybee Island, Georgia. In the spring of 2007, we formed Starfish Coastal Properties, LLC ("Starfish Coastal Properties") to pursue this business idea.

8.    I serve as a member and registered agent of the limited liability company Starfish Coastal Properties. Starfish Coastal Properties is a limited liability company organized and existing under the laws of the state of Georgia, with its principal place of business located at 13 14th Street, Tybee Island, Georgia, in Chatham County, Georgia.

747366-01

1    9.    All members of the Starfish Coastal Properties LLC reside in the State
2    of Georgia.

3    10.    Starfish Coastal Properties does not own, possess or use any real
4    property in the State of California.

5    11.    Starfish Coastal Properties does not have any bank accounts or
6    personal property located in the State of California.

7    12.    Starfish Coastal Properties is not licensed or authorized to conduct
8    business in the State of California, and has no registered agent for service of
9    process in the State of California.

10    13.    Starfish Coastal Properties has never conducted business in the State
11    of California.

12    14.    Starfish Coastal Properties has never solicited any investors from the
13    State of California.

14    15.    Starfish Coastal Properties was organized for the purpose of advancing
15    a proposed real estate fractional ownership venture involving property located in
16    the beach community of Tybee Island, Georgia.

17    16.    Acting in my capacity as an employee of Starfish Coastal Properties, I
18    registered the domain name, www.starfishcoastalproperties.com, and designed a
19    company website detailing Starfish Coastal Properties's proposed real estate
20    fractional ownership venture.   A true and correct copy of the website pages is
21    attached to this declaration as Exhibit A.

22    17.    While I was designing Starfish Coastal Properties' website and
23    preparing its content, I kept track of the internet resources that I consulted in
24    preparing the website, linking each of them into a "Favorites" page on my
25    computer.  I did not visit or review Plaintiff Fractional Villas, Inc.'s website at any
26    time before or during the preparation of Starfish Coastal Properties' website.  The
27    first time that I heard of Plaintiff Fractional Villas, Inc. or its principal, Robert
28    Vicino, was when I was served with this lawsuit in July 2008.

747366-01                                        - 2 -

18.    Starfish Coastal Properties' website was intended to serve as a presentation that could be shown to financial institutions, investors, realtors and other potential business partners in Starfish Coastal Properties's proposed real estate fractional ownership venture.  Toward this end, I gave the website address to 11 local Georgia real estate agents, builders, loan officers, property managers, and potential investors.  I told these individuals that the website was an example of how Starfish Coastal Properties planned to market fractional ownership shares in the Tybee Island, Georgia properties if it was able to obtain financing to buy them.  Some of the individuals identified on the website as "business partners" had not yet committed to participating in the venture.  For these individuals, the website was thus intended to show how these prospective business partners would fit in the overall marketing plan if they were interested in participating and the venture got off the ground.

19.    Upon securing financing and realtor partners, Starfish Coastal Properties intended to have the website then serve as an informational site for potential customers interested in purchasing fractional ownership shares in real estate.

20.    Starfish Coastal Properties never secured any investors or additional financing beyond the startup capitalization for the company.

21.    Starfish Coastal Properties was therefore never able to obtain any real estate for use in the fractional ownership process, and never partnered with any realtors, builders, loan officers, property managers, or potential investors.

22.    In short, Starfish Coastal Properties's proposed real estate fractional ownership venture never got off the ground.

23.    Accordingly, Starfish Coastal Properties undertook no marketing efforts for the fractional ownership idea. Starfish Coastal Properties did not engage in any radio, print or television advertising or other marketing of the fractional ownership product.  It never sought any internet search engine optimization,

DECLARATION OF ERIN SHELDON ISO DEFENDANTS' MOTION TO DISMISS

1    performed any e-mail blasts, or advertised through the web using such commodities
2    as Google ads. No form of internet advertising was used.

3        24.    The Starfish Coastal Properties website provided information about the
4    fractional ownership concept, and contact information for Starfish Coastal
5    Properties. The website also provided details and contact information for several
6    companies whom Starfish Coastal Properties had hoped to secure as business
7    partners (e.g. fractional ownership financers, realtors, etc.), although no such
8    business partners were ever secured. The website has now been taken down.

9        25.    The website was not an interactive site capable of accepting orders
10   from customers. None of the hyperlinks – that is, the links to documents or other
11   websites – were operational. The only way that a site visitor could interact with the
12   website was by clicking on the Starfish Coastal Properties email address posted on
13   the home page, which would allow the site visitor to send an email to the Starfish
14   Coastal Properties' address.

15       26.    Starfish Coastal Properties never entered into any agreements with any
16   customers for the real estate fractional ownership venture. It never sold a single
17   fractional ownership interest.

18       27.    Starfish Coastal Properties received zero telephone calls from third
19   parties who had visited the Starfish Coastal Properties website, and zero regular
20   mail inquiries from third parties who had visited the Starfish Coastal Properties
21   website.

22       28.    Starfish Coastal Properties received only two (2) email messages from
23   third parties who had seen the Starfish Coastal Properties website. These two email
24   messages were from an individual in Hong Kong, and an individual in New York.
25   As Starfish Coastal Properties had not secured financing for the real estate
26   fractional ownership venture, and had obtained no properties for the venture,
27   Starfish Coastal Properties did not enter into any contract or other agreement with
28   either individual.

29.     Starfish Coastal Properties did not enter into any contracts or other agreements with marketing companies, advertisers or any other parties known to reside in California.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED on this ___15th___ day of August, 2008 at __2:35 am__, Georgia.

ERIN SHELDON

- 5 -

747 166-01

# EXHIBIT A

# *Welcome to Starfish Coastal Properties*

About Us    Featured Properties    FAQ    Documentation    Financing    Links    More Information

*Our mission is to provide premier vacation ownership at a reasonable price.  Our customers will enjoy all the benefits of owning a second home at the beach without the cost of second home upkeep. Click here to learn how.*

*We specialize in fractional or shared ownership properties on Tybee Island, Georgia.  We select premier fully furnished properties and offer various intervals of ownership.*

*We look forward to speaking with you concerning this exciting opportunity to finally own your dream home at the beach.  Please visit our Featured Properties page for more details.  You can contact us at info@starfishcoastalproperties.com or by calling 912-655-6315.*

*Chris and Erin Sheldon*

 *About Us*

| About Us | Featured Properties | FAQ | Documentation | Financing | Links | More Information |

Dear Interested Buyer,

Thank you for the opportunity to share a little information about us. We are Chris and Erin Sheldon. We have lived on Tybee Island since 2004 and participated in running a small Bed and Breakfast for three years while investing in the Savannah real estate market.

The experiences we have had while living and working on Tybee have inspired us to find a creative way for those who desire to own beach property the ability to do so in an affordable way. The idea to offer fractional ownership on Tybee Island came from our own research on the options we had for our very own beach property. We were attracted to the idea of fractional or interval ownership because it would allow people to buy beach property at an affordable price, have plenty of time throughout the year to use the property and to share the expenses of the property with six or eight other owners.

We decided to use the symbol of the starfish because it represents how a system of individual parts can work together as a harmonious whole. Fractional or interval ownership is very similar in that a group of individual property owners come together to own a whole property. The intervals are used separately by each property owner or their guests and the expenses of taxes, insurance and maintenance are shared across the owners; thus dispersing the often cumbersome costs of whole ownership. In the event an owner would like to sell his/her interval, after the designated time period and all owners have had a chance at first right of refusal, the owner may offer the fraction to a new buyer and, much like a starfish, a new owner is brought into the Ownership and the system continues as a whole.

We look forward to sharing this exciting new offering and opportunity to you as a Tybee real estate purchaser! Please feel free to contact us via email or phone for questions, details or to purchase your fraction of paradise!

Sincerely,

Erin & Chris Sheldon
Starfish Coastal Properties



## *Documentation*

| About Us | Featured Properties | FAQ | Documentation | Financing | Links | More Information |

Here are sample documents that will be given to you upon request to purchase a Starfish Coastal Properties fractional interest.

Public offering statement
Occupancy Calendar
    Calendar for 1/6th Intervals (4 2-week rotating intervals for a total of 8 weeks)
    Calendar for 1/8th Intervals (3 2-week rotating intervals for a total of 6 weeks)
Contract Agreement
HOA



# *Frequently Asked Questions*

| About Us | Featured Properties | FAQ | Documentation | Financing | Links | More Information |

## <u>Where did the concept of fractional ownership originate?</u>

**Are there legal agreements between the co-owners?**

**Who are fractional properties really for?**

**Why 1/6th or 1/8th shares versus more or less owners?**

**Do you also sell 1/4th shares, or other fractions?**

**How does fractional ownership primarily differ from the economic considerations for wholly owned real estate?**

**How is the home furnished?**

**When can I use the property?**

**Can I use the property on holidays?**

**Can I have guests stay at the property?**

**Can I rent out my unused time?**

**How does Starfish Coastal Properties differ from residence clubs or condo hotels?**

**Can I finance my purchase?**

**What costs are associated with fractional ownership?**

**Who maintains the property?**

**Do I have the same tax considerations with fractional ownership as with purchasing the entire property exclusively?**

**Is the property non-smoking?**

**Are pets allowed at the property?**

**Can I buy more than one interval?**

**How can I sell my 1/6th or 1/8th share in the future?**

## Where did the concept of fractional ownership originate?

In 1994, this new concept debuted in the United States with fractional ownership of vacation homes. Patterned after fractional ownership of private jets, the concept formalized the idea of a group of relatives or buddies pooling their resources to buy a getaway place, and a means for working-class households to at least own a piece of a vacation home. About 75 fractional projects either exist or are being built across the United States, according to industry estimates, compared with 1,600 traditional time-share resorts. According to the National Association of Realtors, in 2004, 36% of all home sales were second homes purchased for either vacation use or investment. Coastal Resort Homes recognized the need for an exclusive vacation home purchase where the benefits of making a wise investment can be realized with an eighth-share fractional deeded ownership. Whether it's a vacation villa, private jet, or yacht, fractional ownership is proving to be the best way to purchase and enjoy high-value assets.

Back to the top

## Are there legal agreements between the co-owners?

Starfish Coastal Properties has developed a set of comprehensive legal documents for its co-owned properties. Each property is owned, governed and operated by a very tight package of legal agreements that remove virtually all ambiguity and questions for each of the owners. These agreements help to assure each owner of their independent quiet enjoyment, legal control, property rights and protection of their investment. This package of documents is tailored specifically to each property and the local municipal codes, and is made available to each buyer in escrow during their contingency evaluation period.

Back to the top

## Who are fractional properties really for?

This type of vacation real estate ownership is ideal if you want the benefits of owning an impressive second home, complete with management services, located in a beach community, and you can not justify whole ownership because of your projected limited use.

Back to the top

## Why 1/6th or 1/8th shares versus more or less owners?

Many forms of vacation property ownership, such as most time-shares are based on just a few weeks of use per year. This effectively becomes more like a prepaid hotel vacation. True pride of ownership can only come from the exclusive right to use your property on a more frequent basis. With 1/6th and 1/8th share deeded ownership, you will have the right to use the property for eight weeks or six, respectively, every year on a rotating schedule. You will enjoy usage throughout all seasons, providing you complete appreciation of your property and the rewards and activities of the community. Studies have determined that the average second home is used less than 30 days per year. Our 1/6th and 1/8th share ownership, provides you with the optimum amount of usage time, while not burdening you with more investment, expense or time than you may need.

Back to the top

**Do you also sell 1/4th shares, or other fractions?**

Depending on local zoning codes, Starfish Coastal Properties may offer different fractional shares of particular properties. In these cases, all documents and operating agreements are adjusted accordingly. Buyers also have the option of purchasing more than one share in a particular property.

Back to the top

**How does fractional ownership primarily differ from the economic considerations for wholly owned real estate?**

Primarily, fractional ownership allows you to afford a much more luxurious and larger vacation property then you may be able to afford on your own. All costs and expenses are divided and shared amongst the owners versus carrying the burden exclusively by yourself. Ownership is evidenced by a fee simple "Tenants In Common" grant deed to the property and is backed by title insurance. You still enjoy all the benefits of real estate ownership. This is a true value catering to discriminating investors who are looking for a second home but really do not want the full burden of owning a second home. The more expensive the property, the more it makes sense.

Back to the top

**How is the home furnished?**

Professional decorators have furnished each home with quality furnishings befitting each locale and the architecture. Every detail is thought out to make you feel at home. No reasonable cost is spared, and nothing is overlooked!

Back to the top

**When can I use the property?**

Upon expressing interest to purchase an interval, Starfish Coastal Properties and the designated real estate agent will provide the legal agreements for your review. Included in the agreement package is an Occupancy Schedule outlining the use periods for each interval for six years.

Back to the top

**Can I use the property on holidays?**

Each owner will experience different weeks every year with the intent that at least once every six or eight year's the major holidays will be included.

Back to the top

**Can I have guests stay at the property?**

Family, friends, business associates, or anyone else you designate, can be accommodated as your guests. Guests are treated as family and may join you, or use the property should your schedule not allow you to attend at the same time. Guests shall be your responsibility and required to respect the Bylaws and Rules & Regulations.

Back to the top

**Can I rent out my unused time?**

Yes, the Tenant In Common and Rules & Regulations allow for the rental of your home through an approved Vacation Rental entity on Tybee Island.

Back to the top

**How does Starfish Coastal Properties differ from residence clubs or condo hotels?**

Both offer luxurious accommodations and services for the person seeking a vacation home. However, the residence club/condo hotel tends to be an individual room or suite located within a major multi-unit complex. In most cases, the ownership is of a "like kind unit", meaning you will rarely stay in the same unit twice.

Back to the top

**Can I finance my purchase?**

Starfish Coastal Properties has arranged with lenders to provide you a mortgage for your purchase. Most owners, however, will either pay all cash or opt to pay for their share with equity from their primary residence using a line of credit.

Back to the top

**What costs are associated with fractional ownership?**

In addition to the initial acquisition cost, you will share in the ongoing expense fees. You will pay your proportionate 1/6th or 1/8th share of the actual property management fees, property taxes, bookkeeping, utilities, housekeeping, deep cleaning, security service, maintenance, property insurance, general sundries and cleaning supplies, and the furnishing and equipment replacement reserve. All costs are passed through without markup. The property manager, Starfish Coastal Properties, works on a fixed annual fee, without a conflict of interest.

Back to the top

**Who maintains the property?**

Starfish Coastal Properties oversees the complete maintenance and care of your home, including the ongoing housekeeping. Your expense fees cover the cost of all maintenance, repair, replacements and wear and tear as required. Professional housekeepers assure the property is always clean and maintained in a first-class condition, as you would expect. Owners and their guests are responsible for any specific substantial damage repair, if incurred during their use of the property. Landscape and pool maintenance (if applicable) is performed on a regularly scheduled basis. The appropriate local trade contractors provide structural maintenance, including painting and repairs. Certified service professionals from the specific equipment manufacturers will maintain the equipment and appliances to our demanding standards. When the homeowners are away, the property manager will look after the property, assuring you the peace of mind that your property is safe and secure.

Back to the top

**Do I have the same tax considerations with fractional ownership as with purchasing the entire property exclusively?**

Fractional ownership is the same as ownership of any other real estate, wherein you enjoy potential appreciation, depreciation, as well as interest and expense deductions. At your discretion, you may sell your share of the property, gift it, or leave it to someone in a Will. Your tax advisor will be better suited to provide specific details, and advise what your individual tax circumstances may offer. You may also register the title in your children's names to assist in estate planning.

<u>Back to the top</u>

### Is the property non-smoking?

For the comfort of all owners and to maintain the condition of the property, smoking is not allowed within any area of the home.

<u>Back to the top</u>

### Are pets allowed at the property?

All pets are prohibited from Starfish Coastal Properties homes.

<u>Back to the top</u>

### Can I buy more than one interval?

You may purchase additional 1/6th or 1/8th intervals to allow you more frequent use of the property. You can also buy additional interests as they may become available in the future from your fellow share owners, or you may sell your fractional ownership interest to another owner, or any third party, at the then fair market value.

<u>Back to the top</u>

### How can I sell my 1/6th or 1/8th share in the future?

You may sell your share to any other owner of the property, or you may sell it to any third party. Typically, shares are listed with a local real estate broker, who will promote your share of the property the same way they promote any other property for sale. You may also sell it directly, by advertising in any publication, or on the Internet. You set the price and you are in control of the sale, just like any other property sale.

<u>Back to the top</u>



# *Featured Properties*

About Us | Featured Properties | FAQ | Documentation | Financing | Links | More Information







## *1306 Bay Street*
## *Bay Vista*

*This is our exclusive single family property located on the quiet North end of Tybee. This brand new 4 bedroom, 3 batch home built by The Cottage Company sleeps 13 and has water views. It comes fully furnished and ready for occupancy. 1/6th intervals available for $165,000. To review our interval ownership program, click here.*

*Click here for property details.*

*Click here to view more pictures*

*Click here for a map*





## *Silver Shores Condos*

*There are eleven fully appointed condominiums in this development. With two and three bedroom units each with two bathrooms, a family of four or a couple of friends can enjoy the luxury accommodations - granite countertops, stainless steel appliances and hardwood floors. Silver Shores is located on the south end of Tybee , only steps from the beach. Each unit comes fully furnished and ready for occupancy. 1/6th intervals available from $89,900. To review our interval ownership program, click here.*





*Click here* for property details.

*Click here* to view more pictures

*Click here* for a map

# STARFISH
### Coastal Properties *FeaturedProperties(financing)*

| About Us | Featured Properties | FAQ | Documentation | Financing | Links | More Information |
|----------|---------------------|-----|---------------|-----------|-------|------------------|

The fractional industry has come a long way in the past couple of decades and with that has come a number of institutions that specialize in fractional ownership funding. Many people will decide to use cash to purchase their fractional interval and others will want to pay cash for a portion and finance the rest. Thanks to the expertise of our partner, First Fractional Funding or Ward Financing,  we can offer expert advice and professional handling of all your financing needs. Please visit our partners site or contact our representative directly.

First Fractional Funding, Erik Anderson

Ward Financing, Tom Ward



# STARFISH
### Coastal Properties    *Links*

We are committed to using the best resources to obtain your vacation dreams. Listed below are some of our partners that help make it all possible.

Waterline Real Estate Group - Brent Palmer and Chris Godfrey assist in marketing

Prudential Real Estate - Bonnie Gaster assists in marketing

Weinstock & Scavo Law Firm - Mark Sanders and Joshua Reeves, our fractional legal experts

First Fractional Funding- Fractional Loan Financing - Erik Anderson

Tybee Vacation Rentals - Carrie provides short term rentals and property management

**Tybee Island Reading Resources:**

City of Tybee - Official City of Tybee website

Tybee Island - Information about restaurants, attractions, and other island news.

The Creative Coast - Exciting information about the dynamic population in Savannah and the Coastal Empire.

**Fractional Ownership Reading Resources:**

Fractional ownership: Get a piece of a vacation home, www.bankrate.com

Fractional Ownership: Getting a Piece of the Pie, Luxury Fractional Guide

Fractionals: A Warm Spot in a Cooling Market, New York Times

Vacation Home Fractional Ownership, Andy Sirkin, Attorney, Sirkin Paul Associates



# More Information

| About Us | Featured Properties | FAQ | Documentation | Financing | Links | More Information |

To fully understand how fractional ownership can provide the perfect vacation home, you need to learn how it works.

First, you need to know what you are purchasing. Georgia's Timeshare Act protects citizens by requiring sellers to fully disclose all terms and conditions of ownership in what is called a Public Offering Statement.

Second,

1    JOSEPH S. KLAPACH (State Bar No. 206345)
     THE LAW OFFICES OF JOSEPH KLAPACH
2    8200 Wilshire Boulevard, Suite 300
     Beverly Hills, CA 90211-2328
3    Telephone: (310) 525-3724
     Facsimile:  (310) 728-1779
4    Email: Joseph@KlapachLaw.com

5    Attorney for Defendants
     STARFISH COASTAL PROPERTIES, LLC,
6    KENNETH CHRIS SHELDON, ERIN PAIGE
     SHELDON

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11   FRACTIONAL VILLAS, INC., a          CASE No. 08 CV 0968 JAH LSP
     California Corporation,
                                         DECLARATION OF KENNETH
12                                       CHRIS SHELDON IN SUPPORT OF
                  Plaintiff,             DEFENDANTS' MOTION TO
13                                       DISMISS FOR LACK OF
          vs.                            PERSONAL JURISDICTION
14                                       UNDER FEDERAL RULE OF
     STARFISH COASTAL PROPERTIES,        CIVIL PROCEDURE 12(B)(2)
15   LLC, a Georgia Limited Liability
     Company, KENNETH CHRIS SHELDON,     Date: October 14, 2008
16   an individual, ERIN PAIGE SHELDON,  Time: 2:30 p.m.
     an individual; and DOES 1-25,       Judge: Hon. John Houston
17
                  Defendants.            Magistrate Judge: Hon. Leo S. Papas
18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF KENNETH CHRIS SHELDON

I, Kenneth Chris Sheldon, declare:

1.    I am over eighteen (18) years of age and competent in all respects to give the testimony in this Declaration, which is based upon my personal knowledge.

2.    I understand this Declaration may be used in connection with a Motion To Dismiss filed by Defendants in the case styled <u>Fractional Villas, Inc. v. Starfish Coastal Properties, LLC, Kenneth Chris Sheldon, Erin Paige Sheldon and Does 1-25,</u> Case No. 08 CV 0968 JAH LSP, filed in the United States District Court for the Southern District of California.

3.    I reside and am employed full-time in the State of Georgia.

4.    I own no real property in the State of California.

5.    I have no bank accounts or any personal property located in the State of California.

6.    I have visited the State of California 4 times in the last 20 years.  None of these visits were for the purpose of transacting business.  All of these visits were for the purpose of visiting family.

7.    I serve as a member and organizer of the limited liability company Starfish Coastal Properties, LLC.

8.    I have not traveled to or been present in the State of California for any business-related activities on behalf of Starfish Coastal Properties, LLC.  In fact, I have taken no trips outside the State of Georgia for any business-related activities in my capacity as a representative of Starfish Coastal Properties, LLC.

9.    I played no role in preparing the content for the website for Starfish Coastal Properties, LLC's real estate fractional ownership venture.  Nor did I visit or review Plaintiff Fractional Villas, Inc.'s website at any time before this action was filed.  The first time that I heard of Plaintiff Fractional Villas, Inc. or its principal, Robert Vicino, was when I was served with this lawsuit in July 2008.

10.    To the extent I performed any acts in furtherance of the business interests of Starfish Coastal Properties, LLC, all such acts were done on behalf of Starfish Coastal Properties, LLC, in my capacity as an officer and/or employee of Starfish Coastal Properties, LLC.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED on this _15_ day of August, 2008 at _Savannah_, Georgia.

_____
KENNETH CHRIS SHELDON

DECLARATION OF KENNETH CHRIS SHELDON ISO DEFENDANTS' MOTION TO DISMISS

1   JOSEPH S. KLAPACH (State Bar No. 206345)
    THE LAW OFFICES OF JOSEPH KLAPACH
2   8200 Wilshire Boulevard, Suite 300
    Beverly Hills, CA 90211-2328
3   Telephone:  (310) 525-3724
    Facsimile:   (310) 728-1779
4   Email: Joseph@KlapachLaw.com

5   Attorney for Defendants
    STARFISH COASTAL PROPERTIES, LLC,
6   KENNETH CHRIS SHELDON, ERIN PAIGE
    SHELDON

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  FRACTIONAL VILLAS, INC., a            CASE No.  08 CV 0968 JAH LSP
    California Corporation,
                                          DECLARATION OF BRENT
12                                        PALMER IN SUPPORT OF
              Plaintiff,                  DEFENDANTS' MOTION TO
13                                        DISMISS FOR LACK OF
         vs.                              PERSONAL JURISDICTION
14                                        UNDER FEDERAL RULE OF
    STARFISH COASTAL PROPERTIES,          CIVIL PROCEDURE 12(B)(2)
15  LLC, a Georgia Limited Liability
    Company, KENNETH CHRIS SHELDON,       Date: October 14, 2008
16  an individual, ERIN PAIGE SHELDON,    Time: 2:30 p.m.
    an individual; and DOES 1-25,         Judge:  Hon. John Houston
17
              Defendants.                 Magistrate Judge: Hon. Leo S. Papas
18

19

20

21

22

23

24

25

26

27

28

    747367-01

## DECLARATION OF BRENT PALMER

I, Brent Palmer, declare:

1.   I am over eighteen (18) years of age and competent in all respects to give the testimony in this Declaration, which is based upon my personal knowledge.

2.   I understand this Declaration may be used in connection with a Motion To Dismiss filed by Defendants in the case styled <u>Fractional Villas, Inc. v. Starfish Coastal Properties, LLC, Kenneth Chris Sheldon, Erin Paige Sheldon and Does 1-25</u>, Case No. 08 CV 0968 JAH LSP, filed in the United States District Court for the Southern District of California.

3.   I am a real estate agent employed at the Waterline Real Estate Group in the Savannah, Georgia, area.

4.   I met with Erin Sheldon of Starfish Coastal Properties, LLC ("Starfish Coastal Properties"), to view a presentation on Starfish Coastal Properties' business plan for a potential real estate fractional ownership venture.  The purpose of the presentation was to see if Waterline Real Estate Group would be interested in serving as real estate agents in the purchase of the properties to be involved in the fractional ownership process.

5.   During this meeting, I learned that Starfish Coastal Properties had not yet obtained any financing and, therefore, had not purchased any real property for use in the real estate fractional ownership venture.

6.   As part of the presentation, Erin Sheldon showed us the Starfish Coastal Properties website and provided us with the website address.  She explained that the website would show how Starfish Coastal Properties planned to market the fractional ownership interests, as well as how Waterline Real Estate Group would fit in the overall business plan if it decided to become a business partner in the venture.

1        7.    Unfortunately, Starfish Coastal Properties was not able to obtain

2    financing and its fractional ownership venture never got off the ground. As a result,

3    Waterline Real Estate Group never served as a realtor for the real estate fractional

4    ownership venture and did not market the real estate fractional ownership idea, the

5    website, or the business plan of Starfish Coastal Properties to any of our clients or

6    any other third parties.

7        Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury

8    under the laws of the United States that the foregoing is true and correct.

9        EXECUTED on this _15th_ day of August, 2008 at _Savannah_, Georgia.

10

11                  _Brent Palmer_

12                  BRENT PALMER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF BRENT PALMER ISO DEFENDANTS' MOTION TO DISMISS